UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRISELIDA R.,

                                    Plaintiff,

v.                                                          5:22-CV-01290
                                                               (TJM/ML)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                              OF COUNSEL:


LAW OFFICES OF KENNETH HILLER        JUSTIN M. GOLDSTEIN, ESQ.
  *Attorneys for Plaintiff*
6000 North Bailey Avenue
Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.          KATHRYN S. POLLACK, ESQ.
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge


## REPORT-RECOMMENDATION

Plaintiff Briselida R. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant"

or "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Dkt. No.

1.)  This matter was referred to me for Report and Recommendation by the Honorable Thomas J.

McAvoy, United States Senior District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d). (Dkt. No. 5.)  This case has proceeded in accordance with General Order 18.

Currently before this court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 13, 14.)  For the reasons set forth below, this court recommends that the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand the Commissioner's decision for further administrative proceedings.

## I.    PROCEDURAL HISTORY

On September 9, 2020, Plaintiff protectively filed an application for DIB, alleging disability dating from July 28, 2020. (Administrative Transcript ("T.") 204-210.)  Her application was denied initially on November 19, 2020, and her request for administrative reconsideration was denied on January 15, 2021. (T. 60-100.)  Plaintiff's subsequent request for a hearing was granted. (T. 153-170.)  On May 28, 2021, Plaintiff and vocational expert ("VE") Susan Gaudet testified by telephone before Administrative Law Judge ("ALJ") Jeremy Eldred. (T. 26-54.)  The ALJ issued an unfavorable decision on June 30, 2021. (T. 8-25.)  The Appeals Council denied Plaintiff's request for review on October 4, 2022. (T. 1-7.)

Plaintiff commenced this proceeding on December 2, 2022 to challenge the Commissioner's denial of disability benefits. (Dkt. No. 1.)

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

3

the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

     **B.**     **Standard for Benefits[1]**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

---

[1] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

4

assessment, whether the claimant can perform any of his or her
past relevant work despite the impairment; and (5) whether there
are significant numbers of jobs in the national economy that the
claimant can perform given the claimant's residual functional
capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

### III.   FACTS

As of the date of the ALJ's decision, Plaintiff was 46 years old. (T. 30, 204).  At the time

of her hearing, she lived with husband and babysat her young granddaughter in her home for a

few days each week. (T. 40, 700).  Plaintiff held a high school equivalency degree and her

employment history included positions as a retail customer service associate, medical assistant,

and phlebotomist. (T. 231.)  Her most recent employment, as a school district clerk/typist,

frequently involved assisting Spanish-speaking parents with translation and completion of

enrollment forms and other paperwork. (T. 32, 231.)

Plaintiff reported neck and lower back pain that radiated down into both legs, and was

exacerbated by climbing stairs, lifting, sitting, standing, and riding in a car for extended periods.

(T. 330, 552, 672.)  Plaintiff had also received outpatient mental health treatment for symptoms

associated with depression, anxiety, and post-traumatic stress disorder since April 2016. (T. 706,

708.)  Plaintiff testified that she stopped working in July 2020 due to the combination of her

physical and psychiatric impairments. (T. 31, 34.)

The record includes Plaintiff's medical and mental health treatment history.  Rather than

summarizing the records at the outset, I will refer to the pertinent records during my discussion

of Plaintiff's arguments.

**IV.**    **THE ALJ'S DECISION**

As an initial matter, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2025. (T. 13.)  Based upon his review of the administrative record, the ALJ next found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 28, 2020. (*Id*.)  At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative changes of the lumbar spine, degenerative changes of the cervical spine, degenerative joint disease, plantar fascial fibromatosis of the right foot, hypothyroidism, obesity, schizoaffective disorder, major depressive disorder with psychotic features, posttraumatic stress disorder, and cannabis use disorder." (T. 13-14.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 1.15 (disorders of the skeletal spine resulting in compromise of nerve roots), Listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), Listing 1.17 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), Listing 9.00 (endocrine disorders), Listing 12.04 (Depressive, bipolar and related disorders) and Listing 12.15 (trauma and stressor-related disorders). (T. 14-16.)  Next, the ALJ found that Plaintiff could physically perform less than the full range of light work. (T. 15-19.)  Specifically, the ALJ found that Plaintiff:

> can stand and/or walk for a total of no more than four hours in an eight-hour workday; can balance no more than frequently; can climb, stoop, kneel, crouch, or crawl no more than occasionally; can understand, remember, and carry out only simple and routine tasks; can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks; can interact no more than occasionally with supervisors, co-workers, or the public; and can appropriately adapt to ordinary changes in an unskilled occupation that involves only simple and routine tasks.

6

(T. 15-16.)

In making this RFC determination, the ALJ stated that he considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p. (T. 16.)  The ALJ further stated that he considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c. (*Id.*)  The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations and found that "the evidence does not fully support [Plaintiff's] allegations regarding the extent of the functional limitations caused by her symptoms." (*Id.*)

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (T. 19-20.)  Relying on the VE testimony, the ALJ next found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (T. 20-21.)  Accordingly, the ALJ found that Plaintiff had not been disabled from her alleged onset date of July 28, 2020 through the date of the ALJ's decision. (T. 21.)

## V.    <u>ISSUES IN CONTENTION</u>

Plaintiff argues that the ALJ improperly evaluated the persuasiveness of the medical opinion evidence, particularly the opinions from two mental health treating sources, Nurse Practitioner ("NP") Toni Usev and Licensed Mental Health Counselor ("LMHC") Kate Alberts. (Dkt. No. 9 at 9-21.)  Plaintiff further contends that the ALJ erred in his evaluation of Plaintiff's daily activities. (*Id.* at 21-25.)  The Commissioner contends that the ALJ properly evaluated all of the record evidence, including the medical opinion evidence and Plaintiff's activities of daily

living, and reached an RFC determination that is supported by substantial evidence. (Dkt. No. 13 at 8-22.)

For the reasons set forth below, this court recommends that Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, and this case be remanded to the Social Security Administration for further administrative proceedings to allow proper evaluation of the medical opinion evidence and Plaintiff's activities of daily living, as well as further development of the record as necessary.

## VI.    RFC AND MEDICAL OPINION EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F.

Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL

587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An

ALJ must specify the functions a plaintiff is capable of performing and may not simply make

conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241,

267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150; *Stephens v. Colvin,* 200 F. Supp. 3d 349,

361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y.

2004).  The RFC assessment must also include a narrative discussion, describing how the

evidence supports the ALJ's conclusions, citing specific medical facts and non-medical

evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11

(N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for

claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including

SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no

longer give any specific evidentiary weight to medical opinions; this includes giving controlling

weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical

Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18,

2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all

medical opinions and "evaluate their persuasiveness" based on the following five factors:

---

[2]  Plaintiff's application was dated September 9, 2020. (T. 204-210.)  Thus, the new
regulations apply in this case.

supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical

10

opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3.    Developing the Record

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the claimant is represented by counsel, to develop the medical record if it is incomplete.  *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). "This entails a heightened obligation to ensure both the completeness and the fairness of the administrative hearing."  *Id.* (citing *Cullinane v. Sec. of Dep't of Health and Human Services of U.S.*, 728 F.2d 137, 137 (2d Cir. 1984) (describing an ALJ's "affirmative duty to ensure that pro se disability insurance benefit claimants receive full and fair hearings")).

In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination.  20 C.F.R. §§ 404.1512(e), 416.912(e).  Although the ALJ must attempt to fill in any obvious gaps in the administrative record, "where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records."  *Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350, 2019 WL 666949, at *3 (W.D.N.Y. Feb. 19, 2019) (quoting

*Johnson v. Comm'r of Soc. Sec.*, No. 1:17-CV-06350, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018)).

    **B.**    **The ALJ's Evaluation of the Mental Health Opinion Evidence Was Not Supported by Substantial Evidence.**

        **1.**   **Summary of State Agency Consultant Opinions**

As part of his evaluation of Plaintiff's mental RFC, the ALJ considered the opinions of Dr. L. Hoffman and Dr. Y. Sherer, state agency consultants who reviewed Plaintiff's then-current psychiatric records. (T. 19, 70-74, 91-95.)  On November 5, 2020, Dr. Hoffman opined that Plaintiff was "able to understand and remember instructions and procedures without substantial limitations," and "able to maintain adequate attention to complete ordinary work tasks on an ongoing basis and is able to independently sustain a routine over time." (T. 74.)  Dr. Hoffman further opined that Plaintiff "has some difficulties with social interaction but retains adequate social skills to manage routine interactions in the workplace," and "has some difficulty coping with stress and this might impact her ability to adapt to change, but she retains the capacity to deal with minor changes in an ordinary work setting." (*Id.*)  The opinion included a narrative section identifying records that Dr. Hoffman deemed relevant to assessing Plaintiff's RFC, including mental health treatment notes prepared by NP Usev in August and September 2020. (*Id.*)

On November 23, 2020, Plaintiff filed a request for administrative reconsideration of her application but did not provide any additional treatment records. (T. 95, 125.)  This coincided with a gap in Plaintiff's mental health treatment between November 2020 and January 28, 2021. (T. 18, 729.)  In response to Plaintiff's request for reconsideration, Dr Sherer reviewed Plaintiff's medical records on January 12, 2021 and found "no new or worsening conditions, no new or

future medical treatment." (T. 95.)  In light of the available evidence, Dr. Sherer affirmed Dr. Hoffman's opinion "as written." (*Id*.)

The ALJ deemed the opinions of Dr. Hoffman and Dr. Sherer to be "persuasive because they are both supported by a detailed narrative rationale, which cites supporting objective medical evidence and other evidence from the record." (T. 19.)  He also found the state agency consultants' opinions to be "consistent with the record as a whole, including the evidence . . . regarding the content of the mental health treatment records and [Plaintiff's] activities of daily living." (*Id*.)

### 2.  Summary of Mental Health Treating Source Opinions

Plaintiff saw NP Usev on a monthly basis for psychiatric treatment, including medication management, dating back to at least August 2020. (T. 291, 304, 669.)  NP Usev's treatment notes for this period are included in the record and show that some of these appointments were conducted by telephone due to COVID-19 precautions. (T. 291-305, 695-717.)  On April 7, 2021, NP Usev prepared a mental health opinion that addressed the functional limitations resulting from Plaintiff's diagnosed schizoaffective disorder, post-traumatic stress disorder, and major depressive disorder. (T. 669-671.)

NP Usev identified Plaintiff's primary mental health symptoms as including pervasive loss of interest in activities, decreased energy, feeling of guilt or worthlessness, generalized persistent anxiety, recurrent and intrusive recollections of past traumatic events, emotional withdrawal, and easy distractibility. (T. 669.)  In her opinion, these symptoms would seriously limit Plaintiff's ability to perform numerous workplace functions, including carrying out very short and simple instructions, maintaining regular attendance and being punctual within ordinary tolerances, completing a normal workday and workweek without interruption, performing at a

13

consistent pace, traveling to unfamiliar places, or using public transportation. (T. 671.) She further opined that Plaintiff's impairments would cause her to be absent from work about four days per month. (*Id.*)

Plaintiff also saw LMHC Kate Alberts for weekly or biweekly mental health counseling sessions since April 2016. (T. 743, 746.) On April 23, 2021, LMHC Alberts prepared a form mental health opinion of Plaintiff's workplace functional limitations along with a more detailed written assessment. (T. 743-747.) She opined that Plaintiff had a "fair" prognosis and required long term treatment for PTSD, "mild" cannabis use disorder, and "severe" major depressive disorder. (T. 743.)

LMHC Alberts opined that Plaintiff had a number of symptoms as a result of her psychiatric impairments: pervasive loss of interest in activities; appetite disturbance; decreased energy; suicidal thoughts; feelings of guilt or worthlessness; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of previous trauma; psychomotor agitation; paranoid thinking; emotional withdrawal or isolation; persistent mood disturbances; easy distractibility; and sleep disturbance. (*Id.*) Based on these symptoms, she further opined that Plaintiff had "no useful ability to function" with regard to working in coordination with or in proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (T. 744.)

LMHC Alberts further opined that Plaintiff was unable to meet competitive standards in her ability to sustain an ordinary routine without special supervision; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request

assistance; respond appropriately to changes in a routine work setting; and deal with normal

work stress. (*Id.*)  She also opined that Plaintiff was "seriously limited, but not precluded" from

maintaining attention for a two hour segment; maintaining regular attendance and be punctual

within customary tolerances; making simple work-related decisions; interacting appropriately

with the general public; maintaining socially appropriate behavior; adhering to basic standards of

neatness and cleanliness; and using public transportation. (*Id.*)  In her opinion, Plaintiff had

"limited but satisfactory" abilities to remember work-like procedures, understand and remember

very short and simple instructions, and carry out very short and simple instructions. (*Id.*)

LMHC Alberts expanded on this opinion in her written narrative, explaining that Plaintiff

had "a significant difficulty with distress tolerance, emotional regulation, and managing and

responding to conflict" that "often impacts her ability to function in a work place setting

including difficulty taking feedback from supervisors, perceptions that she is being attacked and

consistent distraction due to her peers." (T. 746.)  Ms. Alberts also gave examples of Plaintiff's

psychiatric symptoms being exacerbated by common social interactions in the workplace and

daily life. (T. 746-747.)

The ALJ provided a combined evaluation of the mental health treating source opinions,

stating:

> The assessments of [Plaintiff's] work-related mental limitations from Toni Usev,
> PMHNP-BC . . . and Kate Alberts, LMHC . . . are less persuasive.  Although
> both Ms. Usev and Ms. Alberts cited information to support their opinions, the
> supporting information is not well documented on an objective basis in the
> underlying mental health treatment records [citing T. 291, 297-298, 304-305, 699-
> 700, 707-708, 715-716.]  Thus, unlike the opinions of [state agency psychological
> consultant] Dr. Hoffman and Dr. Sherer, the opinions from Ms. Usev and Ms.
> Alberts are inconsistent with the record as a whole.

(T. 19.)

### 3. The ALJ Failed to Adequately Articulate His Reasoning for Finding the Treating Source Mental Health Opinions Less Persuasive than the State Agency Consultant Opinions.

"At their most basic, the amended regulations require that the ALJ explain [his] findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. February 22, 2021). An ALJ's failure to explain the supportability and consistency of the medical opinions in the record is procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019*); see also Loucks v. Kijakazi,* No. 21-CV-1749, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, the Second Circuit has recently clarified that an ALJ's procedural error in failing to explain how he or she "considered the supportability and consistency of medical opinions in the record" does not necessarily preclude affirmance of the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2. As the *Loucks* decision explained, it is well-settled that "[d]espite [an] ALJ's procedural error," a reviewing court can affirm if "a searching review of the record assures [the court] that the substance of the [regulation] was not traversed." *Id*., 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96). Thus, while a reviewing court may not affirm the Commissioner's decision based on an impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole. *See, e.g. John L.M. v. Kijakazi,* No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2-3 (N.D.N.Y. August 18, 2022); *Ricky L. v. Comm'r Soc. Sec*., No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022).

It is well-established that an ALJ may not generally assert that an opinion is "consistent with" or "supported by" the record, without further elaboration. *See, e.g., Melissa S. v. Comm'r Soc. Sec.*, No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) ("[T]he ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true."); *Kathleen A. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *6 (N.D.N.Y. Mar. 7, 2022) ("[I]t is not sufficient for an ALJ to merely discuss other medical sources at some point in the decision."). The ALJ's decision suffers from the same error, as he rejected the Usev and Alberts opinions as inconsistent with the medical record with no explanation. (T. 19.)

Although the ALJ's combined analysis[3] of the two treating source opinions includes nominal citations to NP Usev's treatment notes, the decision contains no explanation how those records undermine the opinions of NP Usev or LHMC Alberts that Plaintiff's mental health impairments made it difficult to maintain a consistent work pace, remain on task, or meet standard workplace attendance and punctuality requirements. *See Alexa J. M. v. Kijakazi*, No. 5:22-CV-243 (BKS/ML), 2023 WL 4467124, at *4 (N.D.N.Y. July 11, 2023) (limited reference to treatment record "does not elucidate how those treatment notes fail to support an opinion that Plaintiff would be off-task more than twenty percent of an eight-hour workday or absent from work about four days per month."). The ALJ's minimal analysis thus "clearly leaves pertinent questions unanswered" regarding his evaluation of the Usev and Alberts opinions. *Raymond M.*,

---

[3] Plaintiff contends that the ALJ erred by combining his analysis of the two treating source opinions into one paragraph, but cites no authority that such "collective evaluation" is impermissible. (Dkt. No. 9 at 12.) Had the ALJ provided a more robust explanation of his evaluation of the medical opinion evidence, this Court sees no reason why a combined analysis could not provide substantial evidence to support his decision.

2021 WL 706645, at *9 (citing *Danette Z. v. Comm'r of Soc. Sec.*, 2020 WL 6700310, at *8

(N.D.N.Y. Nov. 13, 2020)).

   Accordingly, the ALJ committed remandable error by failing to "meaningfully discuss"

the supportability and consistency of the opinions from NP Usev and LHMC Alberts. *See*

*Thomas C.W. v. Kijakazi*, No. 8:21-CV-01198 (AMN), 2023 WL 2742294, at *10 (N.D.N.Y.

March 31, 2023). The ALJ's inadequate consideration of these opinions also calls into question

his evaluation of the persuasiveness of the non-examining consultant opinions from Dr. Hoffman

and Dr. Sherer. *See Danette Z. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1273 (ATB), 2020 WL

6700310, at *8 (N.D.N.Y. November 13, 2020) (remanding, in part, due to non-examining

consultant's inability to review later treating source opinion); *Shawn H. v. Comm'r of Soc. Sec.*,

No. 2:19-CV-113; 2020 WL 3969879, at *8 (D. Vt. July 14, 2020) (remanding where ALJ relied

upon opinion of non-examining consultant who had no opportunity to review treating source

opinions that described greater restrictions). These errors prevent this court from confidently

concluding that the ALJ's evaluation of the persuasiveness of the relevant mental health opinions

is supported by substantial evidence, and cannot be considered harmless.

   Plaintiff contends that the ALJ committed a second error requiring remand by evaluating

the medical opinions without the benefit of counseling notes from LMHC Alberts, whose

treatment relationship with Plaintiff dated back to 2016. (Dkt. No. 9 at 18.) The Commissioner

argues that the ALJ had no obligation to seek these additional records, and that, in any case, the

ALJ was statutorily precluded by the Health Insurance Portability and Accountability Act

("HIPAA") from obtaining psychotherapy notes. (Dkt. No. 13 at 18-19.) Both parties overstate

their arguments.

Numerous courts in this Circuit have rejected the Commissioner's contention that HIPAA presents any meaningful obstacle to the ALJ's acquisition of relevant mental health treatment notes.  *See Dylan T.D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1313 (CJS), 2022 WL 736990, at *7 (W.D.N.Y. March 11, 2022) (rejecting Commissioner's argument that HIPAA precluded ALJ request for psychotherapist notes); *Weiss v. Comm'r of Soc. Sec.*, No. 19-CV-5916 (MKB), 2021 WL 2010503, at *13 (E.D.N.Y. March 23, 2021) (rejecting Commissioner's argument that HIPAA prevents healthcare professionals from being required to disclose treatment notes even with patient consent); *Gentile v. Saul*, No. 19-CV-1479, 2020 WL 5757656, at *5 (D. Conn. Sept. 28, 2020) ("[E]ven if HIPAA protects [the treatment] session notes, the ALJ likely could have obtained redacted versions.")*; Flinton v. Berryhill*, No. 19-CV-2054, 2020 WL 5634462, at *30 (S.D.N.Y. Sept. 4, 2020), *report and recommendation adopted sub nom. Flinton v. Saul*, 2020 WL 5634321 (S.D.N.Y. Sept. 21, 2020) ("[I]t is this [c]ourt's understanding that the SSA routinely obtains mental health records for use in making disability determinations in cases of claimed mental impairments, and if the ALJ believed that a HIPAA release was needed to secure the production of a provider's records, then he presumably could have requested the necessary release from [the] [p]laintiff.")

Still, this court does not adopt Plaintiff's position that the ALJ had an inherent obligation to request LHMC Alberts' counseling notes.  Although the ALJ must attempt to fill in any "clear gaps" in the administrative record, "where there are no obvious gaps ... and where the ALJ already possesses a 'complete medical history,' " the ALJ is under no obligation to seek additional information.  *See Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999).  A proper analysis of the medical opinion evidence will likely demonstrate whether such gaps exist, and thus clarify the ALJ's obligation to seek further development of the record by requesting LHMC

Alberts' treatment notes, or taking other steps such as obtaining a consultative psychiatric examination. At this juncture, however, this court cannot conclude that the ALJ's failure to request the counseling notes presents an independent ground for remand. Therefore, this court's recommendation for remand is based on the ALJ's lack of explanation regarding the medical opinion evidence, not on any clear failure to develop the record.

### C. The ALJ's Evaluation of Plaintiff's Daily Activities was not Supported by Substantial Evidence.

As part of the RFC determination, the ALJ found that Plaintiff's

> activities of daily living do not strongly support a finding of disability. For example, in her October 30, 2020 Function Report, [Plaintiff] reported that she performed a variety of activities, including caring for her husband, caring for her grandchildren (feeding, bathing, and diaper changes), caring for her daughter's dog when her daughter was on vacation, doing light cleaning, doing light grocery shopping, taking out light trash, loading the dishwasher, driving places, and attending medical appointments . . . . During a February 2021 counseling session, [Plaintiff] reported that she was "still taking care of her granddaughter" . . . . In March 2021, [Plaintiff] noted that she was "still taking care [of] her granddaughter, [a] couple [of] days a week when her daughter is on work . . . . At her hearing, [Plaintiff] testified that she is able to drive her husband places, cook, shop with her daughter, and do some cleaning, such as laundry.

(T. 18.)

Plaintiff contends that the ALJ exaggerated Plaintiff's ability to perform her activities of daily living, and thus over relied on those activities to determine that Plaintiff could perform many types of light work. (Dkt. No. 9 at 21-25.) The Commissioner contends that Plaintiff's activities of daily living were a valid line of inquiry. (Dkt. No. 13 at 20-22.)

To be sure, the ALJ was entitled to consider Plaintiff's daily activities as part of the broader record of Plaintiff's functional limitations. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (allowing ALJ to consider daily activities in determining consistency with alleged symptoms); *Natasha D. v. Comm'r of Soc. Sec.*, 3:19-CV-515 (ATB), 2020 WL

1862966, at *9 (N.D.N.Y. April 13, 2020) (ALJ properly considered the plaintiff's testimony about preparing her child for school each morning and taking her to Girl Scout meetings without assistance); *Herrington v. Berryhill,* No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (activities of daily living, including childcare, are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations).

However, the ALJ failed to draw the requisite nexus between Plaintiff's daily activities and her ability to meet the typical demands of light work, particularly as modified in the RFC. *See Tasha W. v. Comm'r of Soc. Sec*., No. 3:20-CV-731 (TWD), 2021 WL 2952867, at *8 (N.D.N.Y. July 14, 2021) (remanding where ALJ failed to draw the necessary connection between Plaintiff's daily activities and the attention and concentration required to remain on-task over the course of an ordinary workday.)  Similar to the ALJ's cursory analysis of the medical opinion evidence, the ALJ did not explain how Plaintiff's irregular child care responsibilities and household activities corresponded with Plaintiff's ability to handle the physical and mental demands of the typical eight hour workday.  *See Ferraro v. Saul*, 806 F. App'x 13, (2d Cir. 2020) (finding plaintiff's "ability to care for his father at home has little relevance to his ability to function in a work setting where he would need to interact appropriately with co-workers and take instructions from authority figures."); *Mallery v. Berryhill*, No. 3:17-CV-587 (DEP), 2018 WL 1033284, at *4 (N.D.N.Y. Feb. 22, 2018) (remanding where plaintiff's ability to perform certain activities outside the house formed "a very weak basis" for the ALJ's RFC determination, because all of the activities were performed at a rate other than eight hours a day, five days a week.); *Miller v. Colvin*, 122 F.Supp.3d 23, 29 (W.D.N.Y. 2015) (finding the ALJ erred by failing to explain how the plaintiff's limited activities of daily living translated into the ability to perform substantial gainful work in a typical competitive workplace environment, where treating

psychiatrist opined that plaintiff was seriously limited in his ability to follow work rules, relate to co-workers, use judgment, deal with work stresses, maintain attention and concentration, and interact appropriately with supervisors). Thus, the evidence regarding Plaintiff's activities of daily living should be revisited on remand, and the ALJ's analysis of this area will likely be impacted by a proper evaluation of all the medical opinion evidence.

In summary, this court recommends remand to allow the ALJ to explain the supportability and consistency factors more fully with regard to the mental health opinion evidence, evaluate Plaintiff's daily activities in the context of the broader record, and further develop the record as appropriate. *See Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) ("If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required."), *rep.-rec. adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be **GRANTED**; Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED** and that the matter be **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

Dated:

 November 20, 2023

Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge